IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHRIS RICE, On Behalf Of Himself and All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) CIVIL ACTION NO. 5:23-cv-414 (MTT) |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) ) |

**ORDER**

Plaintiff Chris Rice filed this action under the Fair Labor Standards Act ("FLSA") on behalf of himself and other similarly situated employees against Government Employees Insurance Company ("GEICO"), alleging they were not paid for pre-shift, post-shift, and downtime activities, such as booting up computers, logging into systems, troubleshooting technical issues, and working through breaks in violation of FLSA's overtime provisions. Doc. 80. Seven opt-in plaintiffs have since joined the case. Plaintiffs now seek to certify a collective and send notice to all current and former hourly-paid GEICO employees who worked at call centers since October 19, 2020, and whose primary job duties involved handling communications with prospective customers regarding insurance sales. Doc. 74. GEICO opposes the motion, arguing that Plaintiffs have failed to demonstrate a common unlawful policy or practice and that the proposed collective is not manageable. Doc. 81. For the following reasons, the motion (Doc. 74) is **DENIED** without prejudice.

## I. STANDARD

FLSA requires covered employers to pay a minimum wage and overtime compensation for each hour that non-exempt employees work in excess of 40 hours per workweek.  29 U.S.C. § 216(b).   Section 216(b) allows employees to bring a collective action on behalf of themselves and other "similarly situated" employees to recover unpaid wages.  29 U.S.C. § 216(b).  "Unlike in a class action under Federal Rule of Civil Procedure 23, an individual who seeks to join a Fair Labor Standards Act suit that was filed as a collective action must affirmatively opt in by filing with the court his written consent to join the action."  *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1339 (11th Cir. 2023) (citing *Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1275-76 (11th Cir. 2018)).  The decision to conditionally certify a collective action and facilitate notice to potential opt-in plaintiffs is within the sound discretion of the district court.  *Mickles*, 887 F.3d at 1278-79 ("[C]onditional certification is solely for notice purposes and does nothing to determine if a party becomes a plaintiff.").

Courts in the Eleventh Circuit typically apply a two-step approach.  This involves an initial "notice stage," where plaintiffs must demonstrate a reasonable basis to believe that other employees are similarly situated in terms of job requirements and pay provisions and that others wish to opt into the action.  *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1260-61 (11th Cir. 2008).  This standard is "fairly lenient" and typically results in conditional certification.  *Id.*  At the second stage, which typically occurs after discovery, the Court applies a more rigorous analysis to determine whether opt-in plaintiffs are, in fact, similarly situated.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).  If so, the case proceeds to trial; if not, the

action is decertified, opt-in plaintiffs are dismissed without prejudice, and the named plaintiffs proceed on their individual claims.  *Hipp*, 252 F.3d at 1218; *see Mickles*, 887 F.3d at 1280 ("District courts have also allowed opt-in plaintiffs to stay in the litigation, even after certification is denied.").

GEICO contends that the Court should not apply the Eleventh Circuit's two-step approach and instead adopt the Fifth Circuit's one-step analysis from *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021), which requires a rigorous review of evidence before certification.  Doc. 81 at 12.  Alternatively, GEICO asks the Court to apply a "modest-plus" standard due to the discovery conducted.  *Id.* at 13-14.  Plaintiffs have argued that discovery is incomplete, making a heightened standard inappropriate.  Doc. 87 at 2-4.  Fact discovery has since expired and there have been no requests for an extension.  In any event, the motion should be denied regardless of the standard that applies for the reasons discussed below.

## II. DISCUSSION

Plaintiffs seek to certify a collective class defined as: "All current and former hourly-paid GEICO employees who were assigned to work for and/or were managed out of a GEICO call center at any time since October 19, 2020, and whose primary job responsibilities include handling telephone calls and/or other electronic communications with prospective GEICO customers regarding the purchase of a GEICO insurance policy, regardless of job title."  Doc. 74 at 1.  They ask the Court to authorize notice to potential opt-in plaintiffs via U.S. Mail and email, provide a 90-day opt-in period, and order GEICO to produce contact information for potential opt-in plaintiffs.  *Id.* at 2.

Plaintiffs and those they seek to notify worked in various hourly-paid positions, such as sales representatives and virtual sales agents, at various locations across the country, including Macon, Georgia; Buffalo, New York; Fredericksburg, Virginia; Virginia Beach, Virginia; Lakeland, Florida; Dallas, Texas; Tucson, Arizona; San Diego, California; and North Liberty, Iowa.  Docs. 80 ¶ 2; 81-7.  Their primary responsibilities involved handling customer inquiries, selling insurance products, and assisting with applications through phone and internet channels.  *E.g.,* Docs. 74-3 at 2-3, 9; 74-5 at 10:2-16:8.  To perform their duties, employees relied on multiple software systems, including call management platforms like Cisco Finesse and AWS Anytime Connect, as well as Customer Relationship Management ("CRM") systems for chat and email communications.[1]  Doc. 74-5 at 72:11-73:24.  GEICO uses software like Finesse (later replaced by AWS) to track employees' availability for handling calls.  *See* Docs. 74-3 at 5 n.4; 74-6 at 27:5-28:21.  Full-time employees typically work 38.75 hours per week, structured as five shifts of 7.75 hours or four longer shifts.  Doc. 74-5 at 39:4-43:19.  Employees are required to self-report their work time in a separate application called Workday for pay purposes.  Docs. 81 at 7; 81-2 at 17:15-25.  Supervisors are responsible for reviewing, correcting if necessary, and approving employees' time entries in Workday.  Doc. 74-10 at 8.  Supervisors may reference Finesse records or rely on direct communication with employees to address any issues or discrepancies in recorded hours, such as downtime due to technical issues or additional time worked beyond scheduled shifts.  *E.g.,* Docs. 74-6 at 15:9-15, 21:1-6, 38:1-6; 74-8 at 37:1-38:16; 74-9 at 14:2-15:11.

---

[1] Finesse allows employees to log "reason codes," for various activities, e.g., "call ready," including non-work activities such as "break" and "personal time."  Doc. 81-3 ¶ 13.

Plaintiffs claim that these practices uniformly affected over 1,000 sales representatives working at 12 call centers across the country, regardless of their specific job duties, title, or work arrangements.  Docs. 74-3; 87.  But Plaintiffs fail to explain how the above practices uniformly resulted in unpaid overtime.

Plaintiffs initially alleged GEICO compensated employees based only on the time they spent logged into Finesse.  *E.g.,* Doc. 80 ¶ 59.  This meant employees were not paid for pre-shift, post-shift, and downtime activities that occurred outside of the software, including booting up computers, logging into necessary software systems, troubleshooting technical problems, and preparing for customer interactions.  *Id.* ¶¶ 29-53.  However, Plaintiffs' counsel recently acknowledged that the data show no correlation between time logged into Finesse and time recorded in Workday, which is consistent with the evidence adduced by GEICO.[2]  *E.g.,* Doc. 81-3.  Plaintiffs now claim they were instructed by supervisors to record 38.75 hours per week in Workday, regardless of actual hours worked.[3]  Docs. 74-3 at 10; 87; *see* Doc. 74-9 at 16:21-25.  This theory is not supported by the evidence in this case.

---

[2] This evidence includes expert testimony and analysis that shows Plaintiffs were paid for more time than they spent logged into Finesse.  *E.g.,* Doc. 81-3 ¶¶ 44-45. Plaintiffs note that Workday records include paid time off ("PTO") and vacation time, which they suggest would naturally exceed the time recorded in Finesse and explains why GEICO's data shows instances where employees were paid for more time than they spent logged into Finesse.  Doc. 87 at 8.  However, days with no Workday entries (e.g., vacation, leave, or training days) were excluded from the expert's analysis.  Doc. 81-3 ¶ 12 ("This eliminated, for example, any leave days, any vacation days, and any training days during which, although the associates' recorded hours, they did not take calls from customers.").

[3] *See* Doc. 74-3 at 3 ("The common policy and practice Plaintiff[s] challenges is simple: GEICO instructs employees to record 38.75 hours for shifts when they handle or are available to handle communications from their scheduled shift start time to their scheduled end time."); *see also* Doc. 74-12 at 8 ("GEICO's timekeeping policy [for pay purposes] was for [employees] to enter 38.75 hours per workweek into … Workday if [they] spent that amount of time available to or actively handling communications with prospective GEICO customers, or, for example, in meetings or trainings.").  Plaintiffs claim they are required to perform additional work outside of this "call ready" time, such as logging into systems, preparing for calls, responding to emails, troubleshooting technical problems, and completing post-shift tasks, which goes unpaid.

The record indicates that the plaintiffs recorded more or less than 38.75 hours per workweek in Workday.  *E.g.,* Docs. 74-8 at 33:12-15 ("Q. … is [it] fair to say that Geico's policy was that associates were to record all their hours? A. I assume so, yeah."), 34:11-17 ("Whatever Finesse showed logged in is what got put in …. if it showed that I worked over 38 hours or if I was logged in for 38 hours or plus, that's what got logged or that's what got paid."); 74-9 at 10:24-11:1 ("Q.  So, you could work more than 38.7 hours in a week, record that time and get paid for it; correct ? A. Sure.").  According to expert testimony filed by GEICO:

> Christopher Rice recorded 38.75 hours in 15.20% of workweeks.  He had 103 workweeks below 38.75 hours and 3 workweeks above it.
>
> Adam Kenawell recorded 38.75 hours in 36.19% of workweeks.  He had 64 workweeks below 38.75 hours and 3 workweeks above it.
>
> Crystal Rowland recorded 38.75 hours in 28.65% of workweeks.  She had 88 workweeks below 38.75 hours and 44 workweeks above it.
>
> Myeshia Hardee recorded 38.75 hours in 41.57% of workweeks.  She had 87 workweeks below 38.75 hours and 10 workweeks above it.
>
> Justin Daniels recorded 38.75 hours in 19.27% of workweeks.  He had 68 workweeks below 38.75 hours and 20 workweeks above it.
>
> Courtlynne Brown recorded 38.75 hours in 22.66% of workweeks.  She had 80 workweeks below 38.75 hours and 19 workweeks above it.

Doc. 81-3 ¶¶ 20, 23, 26, 29, 32, 35, 39.[4]  Plaintiffs make no attempt to engage with GEICO's evidence.  *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). ("[P]laintiffs may … [offer] detailed allegations supported by affidavits which 'successfully engage defendants affidavits to the contrary.'").

---

[4] If employees frequently recorded less than 38.75 hours per week, this may limit their ability to claim unpaid overtime under FLSA.  *See Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F. Supp. 3d 1295, 1303 (N.D. Ga. 2014) ("[A]s a general rule, a group of opt-in plaintiffs cannot be similarly situated for purposes of a collective action when individual determinations regarding liability must be made.").

To be clear, multiple plaintiffs have consistently testified about performing unpaid pre-shift and post-shift tasks, experiencing downtime, and working through breaks.[5]  *See* Docs. 74-6—74-9.  Some also testified that supervisors required employees to use accrued leave or remain unpaid for time lost due to connectivity or IT issues—but only if they were working remotely.  *See* Docs. 74-6 at 38:14-17 ("Q: If there was a tech issue at the office, were you compensated for the time that there was a tech issue? A: Yes, at the office."); 74-8 at 37:4-38:10; 74-9 at 13:8-17:4.  These individuals all appear to be based in Macon, Georgia, although they claim to interact with employees and/or customers in other states.  Docs. 81 at 22-23; 87 at 5, 7.  However, members of the proposed collective work across different geographic locations, including, but not limited to, North Liberty, Iowa; San Diego, California; Tucson, Arizona; and Indianapolis, Indiana.  Doc. 81-7.  Some work entirely remotely, others in hybrid setups, and some on-site at GEICO facilities.  *Id.* at 13-14, 16.  State-specific policies, such as those in California, may impact scheduling practices or adjustments to time entries in Workday.  Doc. 74-5 at 42-43, 84.  These employees report to different supervisors, who, according to GEICO's evidence, vary in their expectations and management practices regarding logging into systems, handling downtime, and conducting meetings or coaching sessions.  Docs. 81-7; 81-27 ¶¶ 6-7.  Employees also reported downtime to their supervisors using different methods, such as text messages, emails, or internal systems, and responses to these reports may differ.  Docs. 74-6 at 15:9-15, 21:1-6, 38:1-6; 74-8 at 37:1-38:16; 74-9 at 14:2-15:11.

---

[5] Many have said they were instructed by supervisors to be "call ready" at their scheduled start time and to use Finesse data to record their hours in Workday, which may exclude time spent on pre-shift, post-shift, and downtime activities.  *E.g.,* Docs. 74-8 at 34:11-17; 74-11 at 11.

These variations undermine the efficiency and fairness of proceeding as a collective action and raise serious manageability concerns.[6]  *See*, *e.g.*, Doc. 81-27 at 6 ¶ 13 ("[Employees] record and are compensated for time spent booting up, logging on, logging off computers, and checking email, but their supervisors' expectations vary for when associates should be in 'call ready' status.").

Finally, Plaintiffs' proposed collective includes employees dating back to October 19, 2020.  Docs. 74; 74-1.  GEICO argues that this includes claims that are time-barred because FLSA's statute of limitations at most extends only three years from the date each plaintiff files a consent to join.  Doc. 81 at 18; *see* 29 U.S.C. §§ 255, 256(b).  Plaintiffs do not address this argument.  For this reason alone, Plaintiffs' motion should be denied.  *Grayson*, 79 F.3d at 1107 (instructing district court "to define the [collective] … to bar putative plaintiffs who have failed to file written consents to opt into the [collective] within" statutory limitation period); *see Ramirez v. SnapMedTech, Inc.*, 2024 WL 3551122, at *7 (N.D. Ga. Feb. 13, 2024) ("[Because] the claims of prospective opt-in plaintiffs are barred …. providing notice to them would be moot."); *compare id.* at *7 ("[T]he only conclusion that the Court can draw is that 'some members of the group [may] not actually have a viable claim in the action at issue,' rendering certification inappropriate.") (quoting *Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F. Supp. 3d 1295, 1305 (N.D. Ga. 2014)).

---

[6] GEICO initially moved to dismiss arguing that booting up computers and logging off computers are preliminary and postliminary to the alleged principal activity of insurance-related communications and thus not compensable under the Portal-to-Portal Act Amendments to FLSA.  Doc. 48.  However, counsel for GEICO has since taken the position that "GEICO's policy is not that … time spent booting down, booting up is uncompensated."  *See* Status Conf., *Willis et al., v. GEICO et al.*, No. 5:23-cv-00430-MTT, *see* Doc. 210 at 1 (M.D. Ga. June 12, 2025).  In short, GEICO does not now contend that such tasks are preliminary and postliminary.

...

-9-

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification and for the Issuance of Court-Supervised Notice pursuant to Section 16(b) of the Fair Labor Standards Act (Doc. 74) is **DENIED** without prejudice.[7]

**SO ORDERED**, this 30h day of June, 2025.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[7] Plaintiffs' Motion to Dismiss Opt-In Plaintiff Danielle Maccio Without Prejudice (Doc. 84) is **GRANTED.**

-9-

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification and for the Issuance of Court-Supervised Notice pursuant to Section 16(b) of the Fair Labor Standards Act (Doc. 74) is **DENIED** without prejudice.[7]

**SO ORDERED**, this 30h day of June, 2025.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[7] Plaintiffs' Motion to Dismiss Opt-In Plaintiff Danielle Maccio Without Prejudice (Doc. 84) is **GRANTED.**